UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRELL RANEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV1150 CDP |
| | ) |
| JASON CRAWFORD, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Terrell Raney, an inmate at Potosi Correctional Center (PCC), claims that correctional officers used excessive force against him and failed to intervene on his behalf during a cell transfer at PCC. In this § 1983 action, Raney, who is proceeding pro se, alleges that the defendants' actions violated his eighth amendment rights.

Defendants move for summary judgment, arguing that: the force was not excessive as a matter of law because it was necessary to maintain security and control; Raney's injuries are not sufficiently serious to maintain an eighth amendment claim; Raney cannot demonstrate that any of the defendants had a reasonable opportunity to intervene; and, Raney is not entitled to the injunctive relief sought as a matter of law. They do not contend that they are entitled to

qualified immunity. Raney opposes the motion. Because material facts remain in dispute, defendants' motion for summary judgment will be denied.

## Standards Governing Summary Judgment

A court may grant a motion for summary judgment only if it finds that all the evidence before it demonstrates "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party. Id. The court must view all facts and resolve all ambiguities in favor of the non-moving party. Id. However, the non-moving party must set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Under these standards I review the facts in this case.[1]

## Background Facts

On October 2, 2006 Raney was housed in a single occupancy cell in the administrative segregation unit at PCC. That day, Keith Hayes, Tim Williford, and Ben Cosgrove came to his cell and told him that he was being transferred to a two-person cell in a different wing of the housing unit. When they arrived at the

---

[1] I am finding these facts for purposes of deciding this motion only. This Memorandum and Order cannot be introduced at trial by any party as evidence, and it does not relieve any party of its burden of proving all facts necessary to sustain any claims or defenses at trial.

double cell, Raney objected and told the officers that the inmate in the cell was his enemy. As a result, he was placed on the restraint bench[2] outside the control room of the housing unit. Raney said that during his time on the restraint bench Williford called him names like "coward" and taunted him about his refusal to go into the cell. About an hour later, Jason Crawford arrived to assist with Raney's cell transfer and began questioning him. When Raney refused to answer some of his questions, he claims that Crawford became "out of control" and told him that would be denied food and water, would be forced to stay on the bench, and called him a "bitch."

Eventually Crawford told Raney that he would have to move to a double cell, but with a different cellmate. Raney agreed, and he was removed from the restraint bench for his cell transfer. He remained in handcuffs and leg irons for the walk to his new cell. Crawford, Hayes, and Cosgrove escorted Raney to his cell, and Williford remained in the hallway outside of the control room. Raney testified that Crawford continued to taunt him during the walk, and that Raney responded by calling him names, too.

At some point, Raney stopped walking during the transfer to his cell. Raney

---

[2] Raney described the restraint bench as a rectangular, steel bench with slots to secure him to it with handcuffs and leg irons.

claims that he was having difficulty walking because of the handcuffs, leg irons, and the fact that Crawford was squeezing his arm, so he stopped to regain his balance. Raney testified that during this time period Hayes was opening the door of the housing unit and Cosgrove was preparing to handcuff his cellmate so that they could open the cell door. Raney testified that when he stopped to regain his balance, Crawford slammed him to the floor on the right side of his body, dropped his knee on the back of Raney's neck, and then kicked him in the face while shouting that he was going to teach Raney a lesson. Raney testified that he did nothing to provoke this attack and received no warning before Crawford slammed him to the ground and beat him. According to Raney, Hayes and Cosgrove were less than ten feet away during the entire incident but did nothing to stop Crawford. Raney testified that he was on the floor for "a little while" before Crawford and Williford yanked him to his feet by his handcuffs. Then they took him to the medical unit, using his head and upper torso as a battering ram to open the housing unit doors. Raney was treated by the nurse for a busted lip, a cut, and bruises on his face and body. Raney also complains of permanent scarring above his right eyebrow and ongoing shoulder pain as a result of this incident.

Raney testified that several inmates and PCC employees witnessed Crawford's attack. Raney has provided the affidavits of other inmates who

corroborate his version of events.  A caseworker in the control room who witnessed the incident reported to his supervisors that Crawford stood on the back of Raney's neck while he was on the ground.  PCC investigated the incident but did not discipline any of the corrections officers involved.  Raney, however, was issued conduct violations for refusing to move to a double cell and for assaulting Crawford.

Defendants dispute Raney's version of events.  They claim that Raney attempted to head butt Crawford during the cell transfer and that, as a result, Crawford "placed" Raney on the floor to restrain his movements in self-defense and to maintain security and control.  Crawford avers that he put his knee on Raney's upper torso after placing him on the ground because Raney "continued to resist" Crawford's efforts to control his movements.  Defendants also contend that Hayes secured Raney's legs with his hands while Raney was on the ground.  Defendants aver that Crawford never placed his knee on Raney's neck or kicked him in the head, and that the defendants did not use Raney as a battering ram to open the housing unit doors.

## Discussion

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence

of any significant injury." Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." Johnson, 453 F.3d at 1112 (internal quotation marks and citation omitted). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002).

A prisoner may assert an Eighth Amendment claim against a correctional officer who fails to intervene on the prisoner's behalf when the prisoner is attacked by another correctional officer. See Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997); Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). The question is whether the officer's inaction amounts to deliberate indifference to a substantial risk of serious harm to the prisoner. Id. at 122. An officer's liability is dependent on whether there was time to intervene. Putnam v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981).

Defendants argue that they are entitled to summary judgment because the

force was necessary to maintain and restore discipline.  Defendants contend that it was "entirely reasonable for Crawford to place Raney on the floor and restrain his movements" because Raney attempted to head butt Crawford.  In support of summary judgment, they also point to Raney's earlier refusal to take a cellmate and his verbal altercation with Crawford during the cell transfer.  Whether the force was necessary to maintain and restore discipline or was applied maliciously and sadistically to cause pain is a hotly disputed issue in this case, and its resolution will require credibility determinations that cannot be made at this stage of the proceedings.  Defendants claim that Raney tried to head butt Crawford and that the resulting force was necessary; Raney claims that he never attempted to head butt Crawford and was merely trying to keep his balance when Crawford slammed him to the ground, drove his knee into his neck, and then kicked him in the forehead while screaming at him.  Defendants deny that they used any force on Raney while escorting him to medical, while Raney contends that he was yanked to his feet by his handcuffs and then used as a battering ram to open the housing unit doors.

Assuming Raney's version of events to be true (as I must), a reasonable jury might well conclude that Raney's eighth amendment rights were violated.  I

certainly cannot decide as a matter of law that the force used was not excessive given the numerous factual disputes about what happened during Raney's cell transfer and his resulting trip to the medical unit.  See Walker v. Bowersox, 526 F.3d 1186, 1188-89 (8th Cir. 2008) (trialworthy issue as to whether use of force to make inmate accept specific cell assignment was excessive when inmate initially resisted transfer but later complied, thereby removing any threat or need for force); Johnson, 453 F.3d at 1113 (summary judgment on eighth amendment excessive force claim improper where facts concerning the need, extent, and application of force were disputed in case involving inmate's initial refusal to comply with correctional officer's orders); Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002) (summary judgment improper in eighth amendment excessive force case where inmate was maced after initially refusing to comply with guard's order, because "not every instance of inmate resistance justifies the use of force.").

These factual disputes also preclude summary judgment on Raney's failure to intervene claims.  Whether Hayes, Williford, and Cosgrove had time and opportunity to intervene is a disputed factual issue in this case that cannot be resolved on summary judgment.  When Raney's testimony that Williford actually participated in the excessive use of force, that Hayes and Cosgrove were less than

ten feet away when Crawford's attack on Raney began, and that neither Hayes nor Cosgrove did or said anything throughout the entire attack which lasted "a little while" is combined with defendants' seemingly contradictory assertions that Hayes had no opportunity to intervene because he was securing another inmate during the incident but that he also restrained Raney's legs (which were in leg irons) after Crawford slammed him to the ground, a reasonable jury might well conclude that Williford, Hayes, and Cosgrove violated Raney's eighth amendment rights. I certainly cannot conclude as a matter of law that Raney is entitled to no relief on his claims against Williford, Hayes, and Cosgrove based on this disputed record. See Buckner, 983 F.2d at 122 (disputed factual issues precluded summary judgment on inmate's eighth amendment claim that correctional officer failed to intervene when another correctional officer beat him while handcuffed).

Defendants also contend that Raney's injuries are not sufficiently serious to maintain an eighth amendment claim as a matter of law. Determining what satisfies the sufficiently serious injury requirement is claim-dependent. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008) (citing Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)). Although a plaintiff must prove actual injury and cannot recover for a de minimis use of force unless repugnant to the conscience of mankind, the

physical injury necessary to maintain an eighth amendment claim need not be significant.  See Irving, 519 F.3d at 441.   Here, whether the use of any force was necessary is a disputed issue of material fact.  Raney was treated for bruises, cuts, and a busted lip, and he complains of ongoing shoulder pain and a scar as a result of this incident.[3]  These physical injuries are sufficiently serious to survive summary judgment and allow Raney's claims to proceed to trial.

Finally, defendants contend that Raney cannot obtain injunctive relief because he cannot demonstrate irreparable injury.  Raney responds that he is entitled to equitable relief because he faces a real and immediate threat of retaliation by defendants for filing this suit.  Raney is still an inmate at PCC where the underlying incident took place, and Crawford and Hayes are still employed as corrections officers there.[4]  Raney claims that he remains in administrative segregation at PCC, in part because he fears that defendants will retaliate against him -- either directly or through other inmates -- if he returns to general population.  The Eighth Circuit has stated that "injunctive force may be unleashed

---

[3]That Raney cannot recall or does not know precisely which injuries were inflicted by which blows is not a sufficient basis upon which to grant summary judgment as argued by defendants, although Raney's recollections are certainly fodder for cross-examination at trial.

[4]The record is silent as to whether Williford and Cosgrove remain employed as corrections officers at PCC.

only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) (internal quotation marks omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (equitable injunctive relief unavailable absent a showing of irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."). Moreover, "in the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison conditions.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Scurr, 676 F.2d at 1214). Although Raney may not be entitled to all of the injunctive relief sought, I cannot conclude as a matter of law that he is not entitled to any equitable relief should he prevail on his claims at trial. Defendants did not file a reply brief in support of summary judgment and did not address Raney's argument that he meets the standard for obtaining injunctive relief. Therefore, on this record I cannot conclude that defendants are entitled to judgment as a matter of law on Raney's request for equitable relief. The propriety,

nature, and extent of equitable relief available to Raney will be addressed by the Court if necessary at the appropriate time following trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#66] is denied.

**IT IS FURTHER ORDERED** that this case will be set for trial by separate Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2008.